Argued and submitted July 30, reversed and remanded November 24, 2004

# STATE OF OREGON,
*Respondent,*

*v.*

# RICK CURTIS STEARNS,
*Appellant.*

C020217CR; A118459

101 P3d 811

Shawn Wiley, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne,

Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals, challenging his convictions on four counts of identity theft, ORS 165.800, and one count of first-degree forgery, ORS 165.013. He argues that the traffic stop that led to the discovery of the evidence of those crimes was unlawful. Specifically, defendant contends that the arresting officer lacked objective probable cause to stop the vehicle in which defendant was a passenger because ORS 803.550, which prohibits "illegal alteration" of registration plates,[1] is not violated when a plate holder or frame partially or completely obscures the word "Oregon" on the plate. We agree with defendant and, consequently, reverse and remand.

The relevant facts are undisputed. On January 19, 2002, Tualatin Police Officer Mike Leader stopped a vehicle after noticing that the frame holder around the rear registration plate completely obscured the word "Oregon" on the top of the plate. All other markings on the registration plate, including the registration stickers, were unobstructed. Leader asked defendant's wife, who was driving the car, for her driver's license, but she did not have any identification.[2] He then asked defendant for his identification, both because defendant was a witness to the infraction and because, if defendant had a valid driver's license, he would be able to drive the car. Defendant handed Leader an obviously forged license,[3] which bore a false name, and Leader arrested him. During an ensuing inventory of the vehicle, Leader discovered many forged licenses, credit cards, employee identification cards, checks, and other evidence inside a duffle bag belonging to defendant. Based on the discovery of that evidence, defendant was charged with four counts of identity theft and one count of first-degree forgery.

---

[1] The text of ORS 803.550 is set out below. 196 Or App at 277. Although the term "license plates" is perhaps more commonly used, ORS 803.550 refers to "registration plates" and we conform to that usage.

[2] The car was registered to defendant.

[3] According to Leader, the license number was not consistent with the year it was issued, the "coloration" was off, and someone had obviously physically tampered with the license.

Before trial, defendant moved to suppress the evidence, arguing that the traffic stop was unlawful. Defendant argued, in part, that Leader lacked objective probable cause for a violation of ORS 803.550 because obscuring the word "Oregon" with a plate holder did not violate that statute. The trial court denied the motion:

> "We have a number of different kinds of license plates. Some are more or less distinctive. You may or may not recognize them. They all are supposed to have 'Oregon.' That's one of the things that's supposed to be on the license plate.

> "There are a lot of people who do drive around with frames that obscure that portion of the license plate, but I think that it is reasonable that Oregon should be in view on the license plate. * * * [T]he fact that there may be other folks who are out there obscuring the word Oregon doesn't have a whole lot to do with the case in front of me. I find that there was reason to stop."

In a written order denying suppression, the court concluded that "there was a valid traffic stop based on violation of ORS 803.550 and subsequent inventory search of defendant's vehicle." Following a bench trial, defendant was found guilty on all counts.

■ The sole issue on appeal is whether the trial court erred in denying the motion to suppress. We review for errors of law. *State v. Riddle*, 149 Or App 141, 144, 941 P2d 1079 (1997); ORS 138.220. An officer may lawfully stop and detain a person for a traffic infraction if the officer has "probable cause to believe that an infraction has been committed." *State v. Isley*, 182 Or App 186, 190, 48 P3d 179 (2002) (citation omitted). "Probable cause exists if, at the time of the stop, the officer subjectively believes that the infraction occurred and if that belief is objectively reasonable under the circumstances." *Id.* As applied here, Leader's subjective belief that a traffic infraction occurred was objectively reasonable only if, in fact, obstruction of the word "Oregon" by a registration plate frame is a violation of ORS 803.550.

■ Before exploring the proper construction and application of ORS 803.550, we must address a threshold argument that the state advances as an alternative ground for

affirming the trial court's suppression ruling. The state contends that, even assuming that the traffic stop was unlawful as based on an erroneous understanding of ORS 803.550, defendant cannot challenge the lawfulness of the stop because he, as a passenger, was not stopped:

> "The stop of [defendant's wife], as driver of the car, for a driving violation, did not effect a stop of defendant. There is no evidence that, before arresting defendant for presenting a forged driver's license, police restricted or interfered with his liberty in any way. * * * Defendant appears simply to assume that he was stopped because the vehicle in which he was riding was stopped by police. That is not the law."

As support for that proposition, the state invokes *State v. Ehret,* 184 Or App 14, 55 P3d 518 (2002), and *State v. Woods*, 134 Or App 53, 894 P2d 511, *rev den*, 321 Or 340 (1995). Defendant counters that " 'a stop of a driver is a stop of a passenger, and the limitations on the officer's authority therefore apply to passengers as well as to the driver.' " (Quoting *State v. Presley*, 181 Or App 296, 300, 46 P3d 212 (2002).)

We reject the state's "no stop" position in these circumstances. Neither *Ehret* nor *Woods* involved suppression motions by defendants who were passengers in *unlawfully* stopped vehicles. Conversely, in *Presley,* we held that a passenger in a stopped car *was* stopped for purposes of ORS 810.410 and the constitutional analysis articulated in *State v. Toevs*, 327 Or 525, 531, 964 P2d 1007 (1998). *Presley*, 181 Or App at 300. We note, moreover, that, regardless of whether defendant was himself personally stopped, as a passenger in a car that was inventoried as the result of an allegedly unlawful stop, and as the owner of property that was inventoried for the same reason, defendant may challenge the lawfulness of that search.[4] *Cf. State v. Miller*, 51 Or App 237, 239 n 1, 624 P2d 1102, *rev den*, 291 Or 9 (1981) ("The facts that defendant was both present in the van at the time of the search and was its owner are sufficient to establish that defendant had a reasonable expectation of privacy protected by the Fourth Amendment and, hence, the state's contention that the defendant lacks standing is without merit.").

---

[4] As noted above, defendant not only owned the duffle bag that Leader inventoried, but was also the registered owner of the car.

■      We return to ORS 803.550. That statute provides, in part:

"(1)   A person commits the offense of illegal alteration or display of a registration plate if the person knowingly does any of the following:

"* * * * *

"(b)   Operates any vehicle that is displaying a registration plate that is illegally altered in a manner described in subsection (2) of this section.

"* * * * *

"(2)   A registration plate is illegally altered for purposes of this section if the plate has been altered, modified, covered or obscured including, but not limited to the following:

"(a)   Any change of the color, configuration, numbers, letters or material of the plate.

"(b)   Any material or covering, other than a frame or plate holder, placed on, over or in front of the plate that alters the appearance of the plate.

"(c)   *Any frame or plate holder that obscures the numbers, letters or registration stickers, so as to render them unreadable.*"

(Emphasis added.) Thus, the statutory construction issue here reduces to whether covering the word "Oregon" on a registration plate with a plate frame "obscures * * * letters * * * so as to render them unreadable." ORS 803.550(2)(c).

In resolving that question of statutory construction, we apply the methodology prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). At the first level of that methodology, we consider the statute's text in context. *Id.* Unsurprisingly, no provision of the Oregon Vehicle Code defines the term "letter." However, as commonly understood, "letter" means a "conventional symbol usu[ally] written or printed representing alone or in combination a simple or compound speech sound, constituting one of the units of an alphabet[.]" *Webster's Third New Int'l Dictionary* 1298 (unabridged ed 1993). The state contends, not implausibly, that words generally, including the

word "Oregon," are composed of letters—and that, consequently, obscuring an entire word necessarily results in the obscuring of "letters." In a related sense, the state suggests that, to construe the statute as prohibiting the obscuring of groupings of letters that do not constitute "words," but permitting the obscuring of groupings of letters that do constitute "words," would be absurd—for example, it would be a violation to cover "Orego" or "regon" but not a violation to cover "Oregon."

Defendant acknowledges that, viewed in isolation, the state's textual argument is plausible. However, defendant emphasizes that *PGE*'s "first-level" inquiry includes not just the statute's text but also the context of the statutory provision at issue, which includes "other provisions of the same statute and other related statutes." *PGE*, 317 Or at 611. Defendant contends that, when the pertinent statutory context is considered, it becomes unambiguously apparent that "numbers" and "letters" in ORS 803.550(2)(c) refer to "the vehicle registration number—that combination of letters and numbers featured prominently in the center of the license plate[.]"

The key to defendant's contextual argument is ORS 803.535. That statute was originally enacted in 1983, *see* Or Laws 1983, ch 338, § 260, two years before ORS 803.550 was enacted in 1985, *see* Or Laws 1985, ch 243, § 2. Because ORS 803.550 has not been amended since its enactment, the proper contextual referent is the version of ORS 803.535 that was in effect at the time ORS 803.550 was enacted.[5] The 1983 enacted version of ORS 803.535 read, in pertinent part, as follows:

"(1)   Registration plates shall be in the size, form and arrangement and made of materials determined by the division subject to the following:

[5] As part of its enactment of the Oregon Vehicle Code in 1983, the legislature repealed a statute that was, for purposes of this appeal, virtually identical to ORS 803.535. *See* Or Laws 1983, ch 338, § 978 (repealing ORS 481.265). ORS 481.265 remained in effect until January 1, 1986, when both ORS 803.535 and ORS 803.550 became operative. *See* Or Laws 1983, ch 338, § 981; Or Laws 1985, ch 243, § 4. For the sake of simplicity, and because the operative language in ORS 481.265 (1983) and ORS 803.535 (as enacted in 1983) are identical, we refer to Oregon Laws 1983, chapter 338, section 260, as the "1983 enacted version of ORS 803.535."

"(a)   The plates shall have a marked contrast between the color of the plates and that of the *numerals, letters* or *characters* thereon.

"(b)   If identification plates are issued, means shall be provided for identifying the vehicle from the front and rear by means of *characters* or *numerals*.

"(c)   All plates shall be made with a reflective material, so as to be a fully reflectorized safety plate. The reflectorized material shall be of such a nature as to provide effective dependable brightness in the promotion of traffic safety during the service period of the plate issued.

"(d)   All plates shall contain the distinctive *number* or *characters* assigned to the vehicle *and the word 'Oregon.'*

"(e)   Except as provided by section 263 of this 1983 Act, registration plates shall bear the distinctive identification assigned to the vehicle by the division upon registration of the vehicle.

"(f)   When a pair of registration plates is issued, each plate shall bear the same identification as the other plate of the pair."

(Emphasis added.)

Defendant emphasizes several features of the 1983 enacted version of ORS 803.535 as pertinent context in construing the meaning of "letters" in ORS 803.550(2)(c). First, defendant emphasizes that paragraph (1)(d) of that statute refers to "the distinctive number or characters assigned to the vehicle *and* the word 'Oregon.' " (Emphasis added.) Thus, defendant reasons, the legislature distinguished between the identifying "distinctive number or characters" on one hand and "the word 'Oregon' " on the other—and, by extension, if the legislature had wanted to prohibit the obscuring of "the word 'Oregon' " (as opposed to merely "numbers" and "letters") in enacting ORS 803.550, it knew how to do so. Second, defendant asserts that use of the terms "characters" and "numerals" in the 1983 enacted version of ORS 803.535(1)(a) unambiguously refers to the (distinctive) identifying information located in the center of the registration plate. *See,*

*e.g.,* Or Laws 1983, ch 338, § 260(1)(b) ("identifying the vehicle from the front and rear by means of characters or numerals"); Or Laws 1983, ch 338, § 260(1)(d) ("the distinctive number or characters assigned to the vehicle"). Defendant reasons that, given that context, the terms "letters" and "numbers" in ORS 803.550(2)(c) connote the same context.

The state highlights a number of problems with defendant's contextual analysis. For example, paragraph (1)(a) of the 1983 enacted version of ORS 803.535, refers to "numerals, letters *or* characters[.]" (Emphasis added.) That usage seems to posit some disjunctive distinction between (1) "characters" and (2) "letters" or "numerals." That, in turn, raises the question, "If numerals and letters aren't 'characters,' what is?"[6] That difficulty is exacerbated by the fact that the provisions of the 1983 enacted version of ORS 803.535 that explicitly refer to "identifying" or "distinctive" information refer to only "characters or numerals" (paragraph (1)(b)) or "the distinctive number or characters" (paragraph (1)(d)). Thus, those paragraphs do not refer to "letters" although the distinctive identifying information featured prominently in the middle of a license plate generally includes some "letters"—at least as that term is commonly understood. Conversely, because paragraph (1)(a) treats "characters" and "letters" as disjunctive, it cannot be easily assumed that "characters" in paragraphs (1)(b) and (1)(d) either connotes or includes "letters." Finally, as the state points out, although paragraphs (1)(b) and (1)(d) of the 1983 enacted version of ORS 803.535 refer to "characters" and not "letters," ORS 803.550(2) refers to "letters" and not "characters."

There are, to be sure, many problems with contextual reference to the 1983 enacted version of ORS 803.535. Nevertheless, it cannot be seriously disputed that that pre-existing statute, which described the content of registration plates, must be context for ORS 803.550, which proscribes obscuring the content of registration plates. *See Griffin v.*

---

[6] As used in this context, "character" is commonly defined as "a distinctive differentiating mark" and "a conventionalized graphic device, token, or symbol typically single or simple in form." *Webster's Third New Int'l Dictionary* 376 (unabridged ed 1993).

*Tri-Met*, 318 Or 500, 524, 870 P2d 808 (1994) (Unis, J., dissenting) (*PGE*'s first-level contextual analysis includes "rules of construction that bear directly on the interpretation of the statutory provision in context, such as the canon that we read statutes '*in pari materia*'—'on the same subject.' ").

Whatever the content of "letters," "numbers," and "characters" in the 1983 enacted version of ORS 803.535, defendant is correct that that statute refers to "the word 'Oregon' " separately from those terms. *See* Or Laws 1983, ch 338, § 260(1)(d). Defendant is also correct that ORS 803.550(2), although referring to, and prohibiting, the obscuring of "letters" and "numbers," does not refer to "the word 'Oregon.' " It could be, as the state posits, that the legislature determined that there was no need in ORS 803.550 to explicitly prohibit the obscuring of "Oregon" because covering of an entire word necessarily involves the (proscribed) covering of "letters." Or it could be, as defendant contends, that the legislature had already, in the 1983 enacted version of ORS 803.535, shown that it knew how to refer explicitly to "the word 'Oregon' " with respect to the information on a registration plate and that its failure to do so in ORS 803.550 evinced its intent that obscuring "Oregon" with a plate holder would not be punishable as a violation. That is, "letters" (or "numbers") in ORS 803.550 necessarily refers to something other than "Oregon." Either construction is contextually plausible. Accordingly, we turn to legislative history. *See PGE*, 317 Or at 611-12.

ORS 803.550 originated as Senate Bill (SB) 104 (1985) in response to a concern that many citizens were painting and intentionally altering their registration plates to avoid identification. *See generally* Staff Measure Analysis, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 11, 1985. For example, in the initial hearings on the bill, Oregon State Police Captain Gerald Norris specifically noted that the concern was with citizens "changing the letters or numbers on the plates" by, for example, using tape to change a "1" to a "4" and making cardboard plates. Tape Recording, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 11, 1985, Tape 13, Side B.

The original draft of the bill read:

"(2)   A registration plate is illegally altered for purposes of this section if the plate or any part of the plate has in any way been altered, modified, covered or obscured including, but not limited to the following:

"(a)   Any change of the color, configuration, numbers, letters or material of the plate.

"(b)   Any material or covering placed on, over or in front of the plate that alters the appearance of the plate in any manner.

"(c)   Any other change that alters the appearance of the plate from that appearance of the plate as issued."

In the early joint subcommittee hearings, Senator Jane Cease and Representative Cindy Banzer both expressed concern that the bill was too strict and would, inadvertently, prohibit *any* alteration of plates. For example, Cease recommended that the draft be revised to address those concerns because "what we're trying to get at is something that covers up the *identifying numbers*, not something that might cover up the blue border *or words*." Tape Recording, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 11, 1985, Tape 13, Side B (statements of Sen Jane Cease and Rep Cindy Banzer) (emphasis added).

Representative Banzer repeated her concerns at a subsequent hearing. She noted that her informal observations of other motorists during her drive from Portland to Salem revealed that the overwhelming majority of vehicles on the road would have been at risk of violating the proposed statute. She commented that

"[f]rames in many cases do obstruct a portion of the numbers or the top of the letters. Now, I guess the question is, what kind of interpretation would there be of the statute? Not only the blue border [around the plate] that you talked about, but the, well you have the three letters and three numbers, well it's not unusual to have the, if you have a 'T' the bar across that, maybe a third of the 'T' was covered up by the frame, or on the bottom part, the sticker was covered up, uh, the 'Oregon,' the bottom part of the 'Oregon' was covered up * * *."

Tape Recording, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 18, 1985, Tape 15, Side A (statement of Rep Cindy Banzer).

An amendment to the bill, including the language currently found in ORS 803.550(2)(c), was introduced at the March 18 subcommittee hearing. *See generally* Minutes, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 18, 1985. Senator Cease expressed her approval of the amendment and commented that it clarified the bill and better reflected the subcommittee's intent. *See generally* Tape Recording, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 25, 1985, Tape 17, Side A. Ultimately, the bill was enacted as amended. *See* Or Laws 1985, ch 243, § 2.

The legislative history is less than overwhelming. It does not, for example, include a single reference to the 1983 enacted version of ORS 803.353. Nevertheless, it expresses two overarching themes. First, the legislature was concerned with a practice of "changing the letters or numbers on the plates," Tape Recording, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 11, 1985, Tape 13, Side B (statement of Captain Gerald Norris), or "cover[ing] up the identifying numbers." *Id.* (statement of Sen Jane Cease). Second, in enacting the "registration plate" amendment now embodied in ORS 803.550(2)(c), the legislature intended to exempt from that prohibition the covering of material at the plate's borders, including the word "Oregon." *Id.*; *see generally* Tape Recording, Joint Subcommittee on the Revision of the Motor Vehicle Code, SB 104, Mar 18, 1985, Tape 15, Side A (statement of Rep Cindy Banzer). Thus, whatever the statutory proscription on the obscuring of "letters" encompasses, it does not apply to circumstances in which a plate holder partially or completely covers the word "Oregon" located on the plate's upper or lower borders.[7]

---

[7] Given our analysis and the circumstances presented here, we need not address whether, as defendant argues, "letters" in ORS 803.550(2)(c) refers exclusively to elements of the identification appearing in the center of a registration plate or may also include other alphabetical identifying information, *e.g.*, special plate designations. *See* ORS 805.230 (amateur radio operator registration plates); ORS 805.255 (salmon registration plates); ORS 805.260 (cultural registration plates); and ORS 805.263 (Crater Lake National Park registration plates).

Given our construction of ORS 803.550(2)(c), there was no objective probable cause for the stop of the vehicle in which defendant was a passenger. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.