Submitted on remand from the Oregon Supreme Court June 24, affirmed
September 8, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MELODEE LYNETTE DUDLEY,
*Defendant-Appellant.*

Washington County Circuit Court
D073203M; A137482

263 P3d 1054

Peter Gartlan, Chief Defender, and Carolyn Bys, Deputy Public Defender, Office of Public Defense Services, for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Anna M. Joyce, Assistant Attorney General, for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

BREWER, C. J.

## BREWER, C. J.

This case is before us on remand from the Supreme Court, which vacated our prior decision, *State v. Dudley*, 232 Or App 436, 222 P3d 709 (2009) (*Dudley I*), and remanded for reconsideration in light of *State v. Ashbaugh*, 349 Or 297, 244 P3d 360 (2010) (*Ashbaugh II*). *State v. Dudley*, 349 Or 663, 249 P3d 1281 (2011) (*Dudley II*). In *Dudley I*, we reversed and remanded defendant's conviction for possession of a controlled substance after concluding that, "because defendant's subjective belief that her liberty was restricted was objectively reasonable, * * * she was stopped" and that that stop had not been supported by reasonable suspicion. 232 Or App at 437. Our holding in that regard was predicated on our decision in *State v. Ashbaugh*, 225 Or App 16, 200 P3d 149 (2008) (*Ashbaugh I*), which the Supreme Court reversed in *Ashbaugh II*. The issue on remand is whether, in light of *Ashbaugh II*, the encounter between defendant and a police officer constituted a seizure under Article I, section 9, of the Oregon Constitution.

The Supreme Court's overriding analysis in *Ashbaugh II* requires a more complete recitation of the facts of this case than we set out in *Dudley I*. Accordingly, we take the uncontroverted facts from our review of the record, and, where the trial court made findings of fact, we are bound by those findings to the extent that they are supported by evidence in the record. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Officer Smith stopped a car in which defendant was a passenger. Smith asked the driver for his license and registration and, as the driver was looking for those items, Smith asked defendant for her identification as well. Defendant gave Smith her identification card; Smith looked at it, wrote down the identification number contained on it, and, after holding the card for about 15 seconds, handed it back to defendant. After the driver handed his identification to Smith, Smith went to his patrol car, contacted his dispatcher, and ran a warrants check on both the driver and defendant. During that time, a second officer, Sergeant DeBolt, arrived to act as a cover officer for Smith. After DeBolt arrived, Smith went back to the driver, whom he suspected of driving under the influence, and asked him to step out of the car and perform field sobriety tests. The driver

agreed, and Smith, DeBolt, and the driver stood at the front of the driver's car while, under Smith's direction, the driver performed the tests. While those events unfolded, defendant was seated in the passenger seat; neither Smith nor DeBolt said anything to her after Smith had returned her identification card.

After conducting the field sobriety tests, Smith decided to arrest the driver. He did so and then left the scene with the driver in custody. After Smith left, DeBolt asked defendant if she had a ride home or knew of anyone who could pick her up. Defendant, who was still seated in the passenger seat, called two friends and received no answer. Defendant then asked DeBolt if she could walk home, and he said "sure." Because he intended to search the car before having it towed from the scene, DeBolt asked defendant to get out of the car. She did so. DeBolt then asked defendant if she had any drugs or weapons in her possession. Defendant answered "[n]o." DeBolt also asked defendant for consent to search both her person and her purse. Defendant consented to both searches, and DeBolt found controlled substances in defendant's purse.

Before trial, defendant moved to suppress the evidence that DeBolt had found. Defendant argued that DeBolt had unlawfully seized her by asking her about drugs and weapons after she stepped out of the car, and, thus, her consent to the searches had been the unattenuated product of that prior illegal seizure. The prosecutor replied that defendant had been free to go at the moment she stepped out of the car and that Debolt's question regarding drugs and weapons "d[id not] create all of a sudden some compelling circumstances that makes any consent obtained after that question * * * invalid." Defendant testified that she had not consented to DeBolt's search of her purse and that, although she had felt free to leave when she got out of the car, she had not felt free to leave after DeBolt asked her if she had any drugs or weapons. The trial court denied defendant's motion, finding DeBolt's testimony to be more credible than defendant's with regard to whether defendant had consented to the search. The court explained:

"I don't believe [defendant's] version of what happened. * * * [T]his was a consensual search, * * * [defendant] knew she was free to go at any time. That she could just as easily have said no to the officer. So I'm going to find that the—the search was a lawful search, then, and it was a consent search."

Defendant was tried by the trial court on stipulated facts and convicted. This appeal followed.

In *Dudley I*, in light of our then-controlling analysis in *Ashbaugh I*, we concluded that "it was objectively reasonable for defendant to believe that she was not free to leave." 232 Or App at 437. Because defendant's subjective belief was objectively reasonable, we concluded that "[defendant] was stopped" and that the "stop was unlawful because the officer who searched defendant lacked reasonable suspicion to believe that she had committed a crime." *Id.*

In *Ashbaugh II*, the Supreme Court reversed our decision in *Ashbaugh I*, "abandon[ed] forthrightly the subjective component" of its prior case law, and set out the following template for determining whether a person has been seized:

"A 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution: (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred."

349 Or at 316 (emphasis in original). As the court indicated, the guiding principle in determining whether an encounter is a constitutionally significant seizure is whether the officer has manifested a "show of authority" that restricts an individual's "freedom of movement." *Id.* at 317.

Applying that template to this case demonstrates that our reliance on defendant's subjective belief as part of our determination that she had been stopped was erroneous. Our recent opinion in *State v. Lantzsch*, 244 Or App 330, 260 P3d 662 (2011) is instructive. There, the defendant was a passenger in a car that was stopped for a traffic violation. The driver of the car was contacted by a deputy, questioned, and arrested. During that time, the defendant was seated in the

passenger's seat of the car. After the driver had been arrested, the deputy, who by that time was accompanied by a cover officer, asked the defendant to step out of the car and walk to the rear of the car. The defendant did so. When the defendant stepped out of the car, the deputy asked him whether he had any drugs or weapons. The defendant answered that he had a pocket knife. The deputy asked the defendant for consent to a search of his person, and the defendant consented. The search revealed controlled substances.

Applying the template set out in *Ashbaugh II*, we concluded that the officer's actions, including his question about whether the defendant had any drugs or weapons in his possession, had not amounted to a "show of authority" that restricted the defendant's movement. As we explained:

> "[A]lthough * * * the deputy here did not tell defendant that he was free to leave, there were no weapons drawn and no evidence that the deputy raised his voice or otherwise spoke in a non-conversational manner when he asked defendant to step out of the car. Although a second officer was standing 'a few feet' behind the deputy, there was no evidence in the record that the second officer made any show of authority toward defendant or, indeed, had any interaction with defendant at all. In that regard, the Supreme Court's observation in *Ashbaugh II* is pertinent: here, the deputy 'did not, for example, position himself and his fellow officer in a way that would suggest to defendant that [he] was surrounded,' and, thus, the mere presence of a second officer is, on this record, not a sufficient basis for us to conclude that the deputy's 'manner or actions' involved a 'show of authority.' *Ashbaugh II*, 349 Or at 317-18."

*Lantzsch*, 244 Or App at 336-37.

The same result obtains here. In this case, the officer's actions toward defendant did not amount to a "show of authority" that restricted her movement such that she was "stopped" when she consented to the officer's search of her purse. As in *Lantzsch*, the officer's question whether defendant possessed any drugs or weapons was not a constitutionally significant "show of authority," and neither was his request that she step out of the car. Unlike in *State v. Courtney*, 242 Or App 321, 325, 255 P3d 577 (2011), the officer's question and his request that defendant step out of the

car were not coupled with any other show of authority, such as the officer's command to the defendant in *Courtney* that he place his hands on top of his head and interlace his fingers. It follows under *Ashbaugh II* that the officer did not "intentionally and significantly" interfere with defendant's liberty or freedom of movement when he asked defendant to get out of the car and that a reasonable person in defendant's situation would not have believed that the officer had done so. Accordingly, we conclude that the trial court properly denied defendant's motion to suppress.

Affirmed.