Submitted February 22, affirmed May 22, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
RONALD BLAKLEY ROSS,
*Defendant-Appellant.*
Marion County Circuit Court
10C49356; A148172

304 P3d 759

Peter Gartlan, Chief Defender, and Kristen A. Carveth, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant appeals a judgment of conviction for one count of unlawful delivery of methamphetamine, ORS 475.890, and one count of delivery of marijuana within 1,000 feet of a school, ORS 475.862. He argues that the trial court erred in denying his motion to suppress evidence that he contends was obtained after he was unlawfully seized during a traffic stop. We affirm.

We review the denial of a motion to suppress for errors of law. ORS 138.220. The trial court's findings of fact are binding on appeal if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If the trial court did not make express findings of fact on a pertinent issue and there is evidence from which those facts could be decided more than one way, we presume that the court found the facts in a manner consistent with its ultimate conclusion. *Id.* Applying those standards, we recite the following facts from the trial court record.

Defendant was a passenger in a pickup truck traveling down a street in Salem shortly after midnight. Salem Police Officer Sommer passed the truck while traveling in the opposite direction and saw that its front registration plate was obstructed. Immediately after observing the pickup truck, Sommer executed a U-turn to follow it and then saw it suddenly turn off the main road into the parking lot of a small apartment complex. Sommer followed the truck into the parking lot and turned on his cruiser's lights.

There were three occupants in the truck. Sommer noticed that the driver was acting "extremely nervous" and that he continued to exhibit nervous behavior as Sommer approached to speak with him. Sommer noticed that both the pickup truck's passenger compartment and bed were quite cluttered. When Sommer asked the driver why he had suddenly turned into the apartment complex, the driver responded that it was because he knew that he was going to be stopped by Sommer. When Sommer asked if they knew anybody who lived at the complex, all three occupants responded that they did not.

The driver handed Sommer his driver's license; Sommer testified at a suppression hearing that he recalled asking the passengers for their names and dates of birth. Sommer testified that he told the occupants to remain in the truck, returned to his patrol cruiser and radioed for backup.[1] Two additional officers arrived seven minutes later. While waiting for backup, Sommer ran the driver's information and discovered that he had a prior conviction for burglary.

After the backup officers arrived, Sommer re-approached the vehicle and asked the driver to step out, while one of the backup officers, Renz, approached the passenger-side door to observe the remaining occupants. Sommer asked the driver for his consent to a search of the pickup truck and the driver agreed. Sommer then asked defendant to step out of the vehicle in order to conduct the search. Sommer asked defendant if he had any weapons on his person, to which defendant—in Sommer's words—replied that he "might have a knife." Defendant refused Sommer's request to pat him down, but was not acting aggressively and was fully cooperative.

At that point, Sommer told defendant that he was free to leave. Defendant replied by saying that he wanted to retrieve his coat that was still in the pickup truck's passenger compartment along with the other passenger. That passenger was being watched by Renz, who was positioned next to the open passenger-side door. Renz said that he would get defendant's coat out of the truck for him. Defendant became insistent upon getting the coat himself and began moving towards the passenger-side door where Renz was standing. Sommer testified that defendant's attempt to approach the vehicle, while not made in an aggressive or hostile manner, made him nervous because Renz was in a confined space, and that Sommer did not know whether defendant or the other passenger had any weapons. Sommer had to physically "steer" defendant away from approaching Renz by moving him away from the passenger-side door and toward the back of the pickup.

---

[1] Defendant did not argue before the trial court, nor does he argue here, that he was seized by Sommer's request for him to stay in the vehicle. We thus express no opinion about whether defendant was seized at that point.

Renz testified that, while Sommer was dealing with defendant, he asked the third passenger where defendant's coat was. In response, the passenger picked a coat up off the seat, told Renz that it belonged to defendant, and then handed it over to Renz. As soon as Renz took the coat, he looked down into an open pocket and recognized marijuana. Later on, Sommer discovered methamphetamine in the same coat pocket. Defendant was put in the back of Sommer's patrol car. The other passenger of the car was then told that she was free to leave, but as she was attempting to do so, Renz grabbed her arm because he was concerned that she might be hiding a weapon. Renz then seized the grocery bag that she was carrying because, according to Renz, defendant had identified it as his property. A subsequent search of the grocery bag revealed a scale with white powder residue on it.

Before trial, defendant moved to suppress all evidence obtained as a result of the stop under Article I, section 9, of the Oregon Constitution.[2] He did not challenge the constitutional validity of the initial traffic stop for the obstructed registration plate violation, but instead argued that the police unlawfully detained him without a reasonable suspicion that he was engaged in criminal activity. Following the trial court's denial of that motion, defendant entered a guilty plea that reserved his right to appeal the suppression issue.

On appeal, defendant concedes that the initial traffic stop was lawful, but renews his argument that he was unlawfully seized in the course of it. Defendant's only argument on appeal is that he became unlawfully seized— by virtue of his status as a passenger in the vehicle—at the moment the traffic stop was improperly extended by Sommer's request for the driver's consent to search the pickup truck. Defendant does not argue that he was seized by any other police action in the course of the encounter. For its part, the state contends, among other things, that defendant was never seized within the meaning of Article I, section 9.

---

[2] Before the trial court, defendant also invoked the Fourth Amendment to the United States Constitution; however, he does not raise any argument under the federal constitution on appeal. We therefore confine our opinion to questions of Oregon law.

> "A 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution: (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances would believe that (a) above has occurred."

*State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010) (emphasis and footnote omitted). One category of seizure subject to Article I, section 9, is a "stop," which involves a temporary restraint of a person's liberty not amounting to an arrest. *State v. Rodgers/Kirkeby*, 347 Or 610, 621, 227 P3d 695 (2010). "The thing that distinguishes 'seizures' * * * from encounters that are 'mere conversation' is the imposition, either by physical force or through some 'show of authority,' of some restraint on the individual's liberty." *Ashbaugh*, 349 Or at 309. Police officers may not extend the duration of a traffic stop by requesting consent to search a vehicle for purposes unrelated to the traffic infraction unless that request is supported by, at least, a reasonable suspicion of criminal activity. *Rodgers/Kirkeby*, 347 Or at 627-28.

A passenger in a lawfully stopped vehicle is not automatically seized within the meaning of Article I, section 9, but a "further exercise of coercive authority over the passengers by officers may, in certain circumstances, constitute a seizure." *State v. Thompkin*, 341 Or 368, 377, 143 P3d 530 (2006) (internal quotation marks omitted). Defendant argues that a passenger is unlawfully seized at the moment the stop of the vehicle becomes unlawful. In other words, he argues that, at the moment the driver of the pickup truck was unlawfully seized by Sommer's request for consent to search the vehicle, he became seized by virtue of his status as a passenger. As support for this contention, defendant cites two cases, *State v. Presley*, 181 Or App 296, 46 P3d 212 (2002), and *State v. Stearns*, 196 Or App 272, 101 P3d 811 (2004). In *Presley*, we stated that "a stop of a driver is a stop of a passenger." 181 Or App at 300. In *Stearns*, we "reject[ed]" the state's argument that a passenger was not stopped when a police officer unlawfully stopped the car he was riding in. 196 Or App at 276. Defendant's reliance on those cases is misplaced.

We recently addressed *Presley* in a context similar to the present one. In *State v. Knapp*, 253 Or App 151, 290 P3d 816 (2012),[3] the defendant was a passenger in a car that was stopped because of nonfunctioning brake lights and because the defendant was not wearing a seatbelt. The officer in that case took the defendant's identification and, instead of processing citations for the vehicle infractions, requested that the driver consent to a search of the car. The driver consented to the request and the search revealed methamphetamine belonging to the defendant. The defendant in *Knapp* argued, as defendant in the present case does, that "he was stopped in his capacity as a passenger in a vehicle in which the driver had been stopped." *Id.* at 153-54.

In concluding that the defendant was not entitled to seek suppression based merely on his capacity as a passenger, we first noted that *Presley* and similar cases were not decided in the context of Article I, section 9, but instead, were concerned with whether a police officer exceeded a grant of statutory authority to conduct traffic stops under a superseded version of ORS 810.410. *Knapp*, 253 Or App at 154. We also cited cases in which we "analyzed whether a passenger had been unlawfully seized during the course of a traffic stop as a question separate from the stop of the driver." *Id.* (footnote omitted) (citing *State v. Lantzsch*, 244 Or App 330, 260 P3d 662, *rev den*, 351 Or 318 (2011); *State v. Courtney*, 242 Or App 321, 255 P3d 577, *rev den*, 351 Or 401 (2011); *State v. Jones*, 241 Or App 597, 250 P3d 452, *rev den*, 351 Or 318 (2011)). In light of that understanding, we concluded that the defendant in *Knapp* was entitled to challenge the legality of the extension of the stop under Article I, section 9, not merely because he was a passenger in an unlawfully stopped car, but because he himself had been seized by a police show of authority directed at him. Specifically, the police officer in *Knapp* had taken the defendant's license and was investigating a traffic infraction that the defendant was suspected of committing. *Id.* at 155-56; *see State v. Lay*, 242 Or App 38, 44, 252 P3d 850 (2011)

---

[3] Petition for review in *Knapp* is being held in abeyance pending decisions in *State v. Musser*, 253 Or App 178, 289 P3d 340 (2012), *rev allowed*, 353 Or 533 (2013) and *State v. Unger*, 252 Or App 478, 287 P3d 1196 (2012), *rev allowed*, 353 Or 533 (2013).

("When an officer conducting a traffic stop takes and retains a passenger's identification, the passenger is considered to have been seized for purposes of Article I, section 9.").

*Knapp* did not address *Stearns*, the other case on which defendant relies. *Stearns* involved a traffic stop that we concluded was unlawful at its inception because it was not supported by probable cause. 196 Or App at 284. Citing *Presley*, we rejected the state's position that the passenger in the car was not stopped within the meaning of Article I, section 9. *Stearns*, 196 Or App at 276. We find defendant's reliance on *Stearns* unavailing. The defendant in *Stearns* owned the car that had been unlawfully stopped and was challenging an inventory search, not a search conducted pursuant to consent. We therefore noted that "regardless of whether defendant was himself personally stopped" he was entitled to challenge the legality of the subsequent search because he owned the property that was inventoried. *Id.* at 276, 276 n 4. It is thus unsurprising that *Stearns* has never been cited by this court for the proposition that a passenger in an unlawfully stopped vehicle is seized by virtue of that person's status as a passenger.

More importantly, *Stearns* was decided before *Ashbaugh* and does not address an important principle from that case: A determination that someone has been seized in the constitutional sense is predicated on police using physical force or making a show of authority. *Ashbaugh*, 349 Or at 309. As a factual matter, a subsequent legal determination that a stop was unlawful has no bearing on what the police did or did not do during the stop. Either a police "show of authority" during a traffic stop is sufficient to constitute a seizure under *Ashbaugh* with respect to a passenger or it is not. *See State v. Rutledge*, 243 Or App 603, 607, 260 P3d 532 (2011) ("Under [*Ashbaugh*] we must consider what the officers actually did and how a reasonable person would perceive those actions.").

Defendant in this case does not argue that he was seized by a "show of authority," such as the police retaining his identification; he merely argues that a passenger is unlawfully seized at the moment that the stop of a vehicle becomes unlawful. Even if we were to assume that the driver

in this case was unlawfully seized under *Rodgers/Kirkeby* by an improper extension of the stop—a point on which we express no opinion—the rule remains that passengers in a car stopped by police *"without more*, have not been 'seized' as a constitutional matter." *Thompkin*, 341 Or at 377 (emphasis added). Regardless of any extension of the stop with respect to the driver, the test for whether a passenger is seized remains the one described in *Ashbaugh*, which states that a seizure occurs "(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances would believe that (a) above has occurred." 349 Or at 316 (emphasis and footnote omitted). As noted, defendant points to no evidence that he was seized under the *Ashbaugh* test. Instead, he relies solely on the notion that he was seized—by virtue of his status as a passenger—at the moment that Sommer requested the driver's consent to a search; despite the statements in *Presley* and *Stearns* on which defendant relies, that argument is insufficient under Article I, section 9.

Defendant argues that *Rodgers/Kirkeby* controls the outcome of this case. The fatal defect in defendant's reliance on *Rodgers/Kirkeby*, however, is that nothing in that case supports the proposition that a passenger is seized when a police officer unlawfully extends the stop of a vehicle. That is because *Rodgers/Kirkeby* did not involve the constitutional rights of passengers at all; only the rights of the defendant drivers were at issue.[4] 347 Or at 613, 615. Although *Knapp* held that a defendant passenger may seek suppression for the unlawful extension of a traffic stop, that was only because, as discussed above, the defendant in *Knapp* was independently seized by a show of authority when an officer took his identification to investigate him for a traffic infraction. 253 Or App at 155-56. Because defendant has not attempted to show that he was seized for reasons other

---

[4] The state acknowledged before the Supreme Court in *Rodgers/Kirkeby* that, "in the context of a lawful traffic stop, the police have 'stopped' the driver and any passengers in the vehicle." 347 Or at 622. We take this statement as nothing more than a reiteration of the rule noted in *Thompkin* that "all passengers in a vehicle subject to a valid traffic stop have been 'stopped' (at least physically) but, without more, have not been 'seized' as a constitutional matter." 341 Or at 377.

than his status as a passenger in a vehicle, to the extent that he relies on *Rodgers/Kirkeby*, he is attempting to seek suppression of the evidence based on a violation of the driver's rights, and that, he cannot do. *See State v. Ehret*, 184 Or App 14, 17, 55 P3d 518 (2002), *rev den*, 337 Or 84 (2004) (stating that, under Article I, section 9, "in the absence of a constitutional violation of defendant's personal rights * * * there is no ground for suppression").

As support for his contention in this appeal that he was unlawfully seized, defendant points only to the fact that he was a passenger in a vehicle whose driver—defendant argues—was improperly seized by an unlawful extension of a traffic stop.[5] Passengers in a stopped vehicle—whether lawfully or unlawfully stopped—are not seized merely by virtue of their status as passengers. Instead, a passenger is only seized when there has been the "imposition, either by physical force or through some 'show of authority,' of some restraint on the individual's liberty." *Ashbaugh*, 349 Or at 309. There having been no seizure of defendant, there was no unlawful seizure of him. Defendant's motion to suppress was therefore properly denied.

Affirmed.

---

[5] We wish to emphasize that defendant did not argue at the trial court level, nor does he argue here, that he was seized when Sommer physically prevented him from getting his coat. We thus express no opinion about whether defendant was seized at that point.