Submitted May 30, 2014, portion of judgment requiring defendant to pay
attorney fees reversed; otherwise affirmed May 20, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BOBBY LEVON HUNT,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1200809; A152254

350 P3d 521

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant appeals a judgment of conviction and sentence for assault in the fourth degree, constituting domestic violence, ORS 163.160(3), and harassment, ORS 166.065(3). On appeal, defendant raises two unpreserved assignments of error, arguing that the trial court erred in two respects. First, defendant asserts that the trial court plainly erred in failing to *sua sponte* strike testimony by a deputy, when that deputy opined that, during his investigation of the incident, he had not believed the victim's initial version of what had occurred during the domestic dispute. Second, defendant argues that the trial court erred by requiring him to pay $510 in court-appointed attorney fees because the record is silent regarding defendant's ability to pay that fee. As explained in more detail below, we do not reach defendant's first unpreserved assignment of error, but we agree with defendant that it is appropriate for us to review and correct his second assignment of error.

The following facts are undisputed. Late one evening, after drinking alcohol, defendant and the victim got in a fight. Some time later that day, Clackamas County Sheriff Deputy Eagle interviewed the victim, who had a black eye. Eagle questioned the victim about how she had received the black eye. The victim initially told Eagle that she "fell down," but later told Eagle that defendant had punched her. Eagle subsequently arrested defendant, who was charged with assault in the fourth degree and harassment.

At defendant's trial, Eagle testified:

"[PROSECUTOR:] And kind of based on her body language and what she said, did you believe her?

"[EAGLE:] No.

"[PROSECUTOR:] Okay. So did you keep asking her questions?

"[EAGLE:] I did.

"[PROSECUTOR:] Okay. What'd you ask her next?

"[EAGLE:] I—I—I asked her to—to, you know, I—it was okay to tell me what had happened. And she told me that—that he—that [defendant] had—had punched her."

At trial, defendant did not object to that testimony, nor did the court strike it. The trial court ultimately convicted defendant, and, as relevant here, sentenced him to 14 months in prison on the assault charge and ordered him to pay $510 in attorney fees. While discussing sentencing, the state presented no evidence that defendant was able to pay the attorney fees, or would become able to do so. Defense counsel discussed defendant's health and employment, explaining to the court that defendant was 54 years old and unemployed, had recently had a collapsed lung that resulted in his hospitalization, and had ongoing struggles with alcoholism.

On appeal, in his first assignment of error, defendant requests that we review as plain error the unpreserved argument that the trial court erred in failing to strike *sua sponte* Eagle's testimony that, during his investigation of the incident, he had not believed the victim's initial account that she had received the black eye as a result of falling down.

There are three requirements for plain error review. First, the error must be "one of law"; second, the error must be "apparent," *i.e.*, the point must be "obvious, not reasonably in dispute"; and third, the error must be plain, in that it appears "on the face of the record," so that it is not necessary that we go outside the record to identify the error or choose between competing inferences. *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990) (internal quotation marks omitted).

Defendant contends that the trial court plainly erred because the deputy's statement was offered for the purpose of undermining the victim's credibility. The state responds that the error does not appear on the face of the record. According to the state, the deputy's testimony was offered for a relevant and proper purpose—*i.e.*, to show the deputy's state of mind regarding his investigation of the domestic dispute. Thus, according to the state, it is not clear in that context that the deputy was vouching on the credibility of the witness. We agree with that proposition, and we conclude that the error is not plain. Thus, we do not reach defendant's first unpreserved assignment of error.

Next, we turn to defendant's second assignment of error. Defendant contends that the trial court plainly erred by imposing on him a $510 court-appointed attorney fee when the record is silent regarding defendant's ability to pay that amount.

The state asserts that the trial court was not required to engage in a colloquy with defendant about his ability to pay, or find such facts on the record. In the state's view, because defendant failed to object to the imposition of fees, the court could have learned that defendant had money from another source, and the record does not demonstrate that defendant has no money, the error here, if any, is not plain.

We rejected a similar argument in *State v. Coverstone*, 260 Or App 714, 320 P3d 670 (2014). In that case, the defendant appealed a judgment that ordered him to pay $8,000 in court-appointed attorney fees. He argued that there was no evidence in the record to of his ability to pay those fees. Reviewing the defendant's unpreserved claim for plain error, we explained that "a court may not order a defendant to pay the fees unless the defendant is or may be able" to pay them. *Id.* at 715 (internal quotation marks omitted). We rejected the state's argument that the trial court was not required to engage in a colloquy or factfinding on the record relating to defendant's ability to pay, concluding that

"[t]he problem with the state's position is that it essentially shifts the burden of proof to defendant; that is, it would require a defendant to demonstrate that he or she cannot pay attorney fees. That is impermissible. *See [State v.] Pendergrapht*, 251 Or App [630,] 635 n 6[, 284 P3d 573 (2012)] ('As we made clear in *[State v.] Kanuch*, [231 Or App 20, 24, 217 P3d 1082 (2009)], the state bears the burden of proving that a defendant is or may be able to pay attorney fees. A defendant is not required to prove that he or she is unable to pay them.')."

*Id.* at 716. We exercised our discretion to correct the error in that case because the error was grave—$8,000 in attorney fees imposed constituted a substantial sum—and the defendant was incarcerated for a lengthy prison term. *Id.* at 716-17.

Like in *Coverstone*, here the state acknowledges that the record is silent as to defendant's ability to pay the attorney fees ordered by the court. During the sentencing proceedings, defense counsel engaged in a colloquy that was unrelated to defendant's ability to pay the attorney fees ordered by the court. During that colloquy, defense counsel provided the court with information about defendant's age, health and alcohol addiction issues, and current employment status. Even with that information, it is apparent from the record and not reasonably in dispute that the state failed to present evidence of defendant's ability to pay, and, therefore, the trial court erred when it concluded that defendant was able to pay those fees. *See* ORS 151.505(3) ("The court may not require a person to pay costs under this section unless the person is or may be able to pay the costs."); ORS 161.665(4) ("The court may not sentence a defendant to pay costs under this section unless the defendant is or may be able to pay them.").

In light of that conclusion, we must determine if it is appropriate to exercise our discretion to correct the error. In making that determination, we consider such things as "the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

The state argues that, even if we conclude that the trial court erred, several factors weigh against an exercise of discretion to correct the error. First, the state contends that the error is not grave, because, "[i]f defendant is, in fact, unable to pay the $510 in fees, defendant may 'petition the court for remission of the payment of costs or any unpaid portion of the costs' pursuant to ORS 151.505(4)." The state further argues the policies underlying preservation support its contention and, as a result, that the "lack of evidence in the record is due to defendant's failure to object and this court therefore should not consider his claim." Both facets of the state's arguments place the onus on defendant to establish his or her ability to pay on the record or to object when the state has failed to do so. In light of *Coverstone*, 260

Or App at 716, and that decision's focus on both the state's burden to establish the defendant's ability to pay and the trial court's affirmative duty to ensure that the statutory requirements have been satisfied before imposing attorney fees, we reject the state's arguments.

Recently, in *State v. Baco*, 262 Or App 169, 170, 324 P3d 491, *rev den*, 355 Or 751 (2014), we reviewed a similar case for plain error and determined that the record did not demonstrate that the state had met its burden of showing that the defendant "is or may be able to pay" the fees. In *Baco*, the state failed to satisfy its burden of proving that defendant "is or may be able to pay" the court-ordered attorney fees. *Id.* at 170. However, we declined to exercise our discretion to correct the error, concluding primarily that the gravity of the error did not weigh in favor of correction based on the small amount of the court-ordered attorney fees ($510), the defendant's probationary sentence in that case (which did not prevent him from working to pay the fees), and the fact that the defendant agreed to the state's recommendation of attorney fees in the same amount for another charge sentenced at the same time as the criminal impersonation sentencing. *Id.* at 170-71.

Here, the amount of attorney fees imposed by the court is the same as in *Baco*. However, the defendants received different sentences. As noted, in *Baco*, the defendant received only a probationary sentence; therefore, the defendant could continue to work to pay the fees. Here, defendant was sentenced to 14 months in prison. The record contains no evidence that he has another source of income or that he has or will have the capacity to pay the fees. Thus, under the circumstances presented in this case, we conclude that the gravity of the error weighs in favor of correcting the error.

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.