## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KELSY LYNN GRAVES,
*Defendant-Appellant.*

Washington County Circuit Court
C140245CR; A156987

373 P3d 1197

Shawn E. Wiley, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Nani Apo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**SHORR, J.**

In this criminal appeal, defendant makes two assignments of error. First, defendant assigns error to the trial court's denial of her motion to suppress evidence that the police obtained after an officer asked defendant to step out of her car, in which she had been travelling as a passenger, and asked her a series of questions about her criminal history. During that conversation, the officer saw a knife protruding from defendant's pant pocket. The officer took the knife from defendant for safety reasons and discovered that it was a spring-assisted knife that cannot legally be concealed on a person. Defendant was then arrested. During a patdown search of defendant and a search of her car incident to her arrest, the police found illegal drugs, drug packaging, digital scales, and other drug paraphernalia. Defendant was ultimately convicted of several counts relating to the unlawful delivery and possession of heroin and methamphetamine as well as one count of being a felon in possession of a restricted weapon. Second, defendant assigns error to the trial court's imposition of attorney fees when the record is silent as to whether she is capable of paying those fees.

Defendant first argues that the police officer unlawfully seized her without reasonable suspicion that she had committed a crime when he asked her to get out of her car and questioned her, which resulted in the discovery of incriminating evidence. We conclude that defendant was not seized when she was asked to leave her car or when the officer asked her questions by his patrol car and, therefore, the trial court did not err in denying the motion to suppress.

Defendant next contends that the trial court erred in ordering that she pay $1,352 for her court-appointed attorney fees. Defendant, who did not object to the order, argues that the court committed plain error in imposing the fees because the record is silent as to defendant's ability to pay them. With respect to that assignment of error, we conclude that the trial court plainly erred in imposing $1,352 in attorney fees, and we exercise our discretion to correct the error. Accordingly, we reverse the portion of the judgment imposing attorney fees and otherwise affirm.

We begin our analysis with our standard of review. In reviewing a denial of a motion to suppress, we are bound by the trial court's historical findings of facts if they are supported by evidence in the record. *State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014). "If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993) (citation omitted). We are not bound by the trial court's constitutional conclusions, but determine whether the court correctly applied the law to the historical facts. *State v. Barmon*, 67 Or App 369, 374, 679 P2d 888, *rev den*, 297 Or 227 (1984).

Applying that standard of review, we turn to the trial court's findings of historical fact, which are undisputed on appeal. On January 28, 2014, defendant was riding as a passenger in her own car. Officer Haugen observed what he believed to be a traffic infraction committed by the driver and stopped the car. Haugen, who was accompanied by a reserve officer, went to the driver's side of the vehicle and spoke with the driver about the traffic violation. Defendant, who was in the passenger seat, told Haugen that she was the registered owner of the car and offered to show him her license, which Haugen declined. While speaking with the driver and defendant, Haugen noticed that they both had a "pale kind of sickly" look on their faces, stained fingers, and sores on their hands. Based on Haugen's experience, those signs were indicative of heroin use.

Haugen returned to his patrol car and, shortly after starting to prepare the citation for the driver, called for a canine unit, handed the citation off to the reserve officer to complete, and returned to the car, this time walking up to the passenger side to speak with defendant. Haugen asked defendant to step out of the car, and she did. He then asked her or directed her to walk to a point in front of his patrol car, where he began to question her. Haugen asked defendant whether she had a criminal history and whether she was on parole or probation. Defendant told Haugen that she was recently out of prison for a drug-trafficking crime, which

Haugen understood to be a felony. At one point, Haugen asked defendant for consent to search her car, which she refused. Throughout the conversation, Haugen did not show any physical force, place defendant in handcuffs, or tell defendant that she was not free to leave. The trial court found credible Haugen's testimony that defendant was cooperative and engaged in easygoing conversation at this point.

During the conversation, however, defendant repeatedly touched a location on her pant pocket, a repetitive motion that Haugen associated with drug use and described as "indexing." Defendant's behavior drew Haugen's attention to that area of her clothing. Later in the conversation, defendant moved in a manner that caused her jacket or shirt to lift up, and Haugen saw a knife in that pocket. Out of a concern for his safety, Haugen reached out and took the knife, which he then noticed was spring loaded. Haugen knew that defendant was not lawfully permitted to possess a concealed, spring-loaded knife. Haugen believed he had probable cause to arrest defendant at that point. After backup officers arrived, defendant was arrested and read her *Miranda* rights. Despite initially indicating that she did not want to talk to police, defendant later voluntarily spoke with police after being re-read her *Miranda* rights. In patting down defendant and searching defendant's car incident to her arrest, the officers found, among other things, heroin, methamphetamine, drug scales, and drug paraphernalia.

As noted, defendant moved to suppress the evidence of the illegal drugs, the drug-related items, and incriminating statements she made to officers about those items after her arrest. Defendant argued to the trial court that Haugen seized her when he asked her to get out of her car, directed her toward the front of his patrol car, and began asking her questions about her parole status and criminal history. Because Haugen lacked reasonable suspicion that defendant was engaged in criminal activity, defendant argued, the stop was unlawful, and all evidence discovered after that point should be excluded.

The trial court denied defendant's motion, concluding that defendant got out of her car and spoke with Haugen of her own accord and, therefore, was not seized up until the

point that Haugen saw her knife and removed it from her pocket. The trial court further concluded that Haugen had an objectively reasonable safety concern that allowed him to take the knife, and, when he noticed that the knife appeared to be spring loaded, Haugen had probable cause to arrest defendant. Following a bench trial, the trial court dismissed one of the counts against defendant, convicted her on the remaining counts, and sentenced defendant to a total of 36 months in prison.

On appeal, defendant reprises the argument she made below that, under Article I, section 9, of the Oregon Constitution, she was unlawfully seized by Haugen when he asked her to get out of her car and walk to his patrol car, and questioned her about her parole status and criminal history. Defendant argues that a reasonable person under those circumstances would feel that she was under criminal investigation and, therefore, would not feel free to end the encounter and leave. Because nothing that Haugen had observed up to that point gave him reasonable suspicion to seize defendant, defendant argues, the stop was unlawful.

The state argues on appeal that Haugen did not seize defendant until he took the knife from her pocket, at which point he had a permissible safety concern to do so. Everything prior to that, the state argues, was consensual conversation that did not rise to the level of a seizure and, accordingly, the trial court did not err in denying her motion to suppress.

We begin our analysis with Article I, section 9, which guarantees individuals the right to be "secure in their persons *** against unreasonable search, or seizure." The Supreme Court has recognized that, "out of the broad range of potential encounters between police and citizens, only some implicate the prohibition in Article I, section 9, against unreasonable 'seizures.'" *State v. Ashbaugh*, 349 Or 297, 308, 244 P3d 360 (2010). In considering what amounts to a seizure, the Supreme Court has roughly divided that broad range of police-citizen encounters into three categories. *Id.* at 308-09. The first is "'mere conversation,' that is, noncoercive encounters that are not 'seizures' and, thus, require no justification under Article I, section 9." *Id.* at 308.

The second is termed "'stops,' a type of seizure that involves a temporary restraint on a person's liberty and that violates Article I, section 9, unless justified by, for example, necessities of a safety emergency or by reasonable suspicion that the person has been involved in criminal activity." *Id.* at 308-09. The third category is "'arrests,' which are restraints on an individual's liberty that are steps toward charging individuals with a crime and which, under Article I, section 9, must be justified by probable cause to believe that the arrested individual has, in fact, committed a crime." *Id.* at 309.

In *Ashbaugh*, the Supreme Court articulated an objective test to determine whether a person has been "seized" under Article I, section 9: A person is seized

"(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances would believe that (a) above has occurred."

*Id.* at 316 (emphasis omitted). That determination "requires a fact-specific inquiry into the totality of the circumstances of the particular case"—though we recognize that "the line between a 'mere encounter' and something that rises to the level of a 'seizure' does not lend itself to easy demarcation." *State v. Fair*, 353 Or 588, 595, 599, 302 P3d 417 (2013) (quotation marks and brackets omitted). The distinguishing feature of a seizure—a stop or arrest—as opposed to mere conversation "is the imposition, either by physical force or through some 'show of authority,' of some restraint on the individual's liberty." *Ashbaugh*, 349 Or at 309.

As a basic rule, an officer who pulls over a driver for a traffic infraction has seized that driver; the officer has not, however, automatically seized any passengers in the car. *State v. Amaya*, 336 Or 616, 630, 89 P3d 1163 (2004). For a passenger to be stopped, some further show of authority directed at the passenger is required. *State v. Thompkin*, 341 Or 368, 377, 143 P3d 530 (2006); *State v. Ross*, 256 Or App 746, 753, 304 P3d 759 (2013) (stating that "the test for whether a passenger is seized remains the one described in *Ashbaugh*"). Additionally, an officer who extends a traffic stop by investigating matters unrelated to the suspected

traffic infraction committed by the driver may violate the constitutional rights of that driver by doing that, but such an unlawful extension of a traffic stop does not implicate the Article I, section 9, rights of the passenger unless that passenger has been independently stopped as well. *State v. Clemons*, 267 Or App 695, 699-700, 341 P3d 810 (2014).[1]

We have held that, when an officer stops a driver for a traffic infraction and then asks a passenger to step out of the car, the passenger is generally not seized, even when the officer asks that passenger to walk toward his patrol car and proceeds to ask potentially incriminating questions. In *State v. Lantzsch*, 244 Or App 330, 333, 260 P3d 662 (2011), police stopped the driver of a car for a traffic violation, arrested the driver on an outstanding warrant, and one of the officers then asked defendant, a passenger in the car, to "step out of the car and talk to him," and "did not tell [the] defendant that he was free to go." *Id.* Once out of the car, the defendant "was asked to walk back to the rear of the car to meet the deputy," where the defendant was asked whether he had any "weapons or contraband." *Id.* The defendant told the officer he was carrying a knife and then consented to a search for the knife, during which the officer found methamphetamine. *Id.* Noting that "the guiding principle" in determining whether a seizure had occurred is "whether the officer has manifested a 'show of authority' that restricts an individual's 'freedom of movement,'" we concluded that no such "show of authority" had occurred. *Id.* at 335-36 (quoting *Ashbaugh*, 349 Or at 317). Although the officer never told the defendant that he was free to leave, the officer "did not direct [the] defendant to take any physical action beyond stepping out of, and walking to the back of, the car." *Id.* at 338. There "were no weapons drawn and no evidence that the deputy raised his voice or otherwise spoke in a nonconversational manner when he asked [the] defendant to step out of the car." *Id.* at 336.

Similarly, in *State v. Parker*, 266 Or App 230, 238, 337 P3d 936 (2014), we concluded that the defendant, a passenger in a stopped truck, was not seized when, after

---

[1] Though defendant raised an argument below under the Fourth Amendment to the United States Constitution, defendant did not raise that argument on appeal and so we do not consider its application here.

police cited the driver for driving with a suspended license and arrested another passenger on an outstanding warrant, an officer asked the defendant to step out of the truck, asked if he had any weapons, and then searched him. *Id.* As in *Lantzsch*, we concluded "that [the] defendant was not stopped because the officer's actions toward [the] defendant did not amount to a 'show of authority.'" *Id.* Although recognizing that the officers never told the defendant that he was free to leave, we concluded that the totality of circumstances demonstrated "that the officers asked [the] defendant, a passenger in a lawfully stopped truck, for information" and "sought his cooperation in various respects." *Id.* at 239. "Nothing about those circumstances demonstrate[d] that [the officer], explicitly or implicitly, conveyed to [the] defendant that he was not free to terminate the encounter or otherwise go about his ordinary affairs." *Id.*; *see also State v. Smith*, 247 Or App 624, 626, 270 P3d 382 (2012) (passenger not stopped after officer pulled over car for a traffic infraction and asked passenger to get out and whether he had "anything on [him he] shouldn't have" such as "weapons, anything like that"; officer intended to tow the car that passenger was in, but did not tell him, and the officer did not tell passenger he was free to go); *State v. Dudley*, 245 Or App 301, 304, 306, 263 P3d 1054 (2011), *rev den*, 354 Or 838 (2014) (passenger not stopped when officer asked her to get out of car and then asked whether she had drugs or weapons and if she would consent to a search); *State v. Jones*, 241 Or App 597, 250 P3d 452, *rev den*, 351 Or 318 (2011) (same).

Though defendant concedes that, under that case law, "the mere fact that the officer asked defendant in this case to exit the vehicle did not constitute a stop," she contends that, "once the officer began questioning defendant about her possible involvement in drugs," and requested consent for a search, "defendant became aware that * * * the officer was conducting a specific criminal narcotics investigation of her completely apart from the traffic stop." (Emphasis omitted.) Because the driver had not been cited for his traffic violation when defendant was asked to get out of the car, and because Haugen's questioning "was specific to defendant and focused on defendant's criminal past," defendant argues, a reasonable person under the totality of those circumstances would

feel that she "was the subject of a criminal investigation unrelated to the traffic stop and was not free to leave."

In each of the cases cited above—*Lantzsch, Parker, Smith, Dudley,* and *Jones*—the officer, upon asking the defendant to get out of the vehicle, proceeded to ask the defendant whether he or she was carrying drugs or weapons. To the extent that Haugen's questions differed from those in the cases cited above, they are within the range of questions we have concluded did not have the effect of seizing the affected individuals.

"[P]olice inquiries during the course of a traffic stop (including requests to search a person or vehicle) are not searches and seizures and thus by themselves ordinarily do not implicate Article I, section 9." *State v. Rodgers/Kirkeby,* 347 Or 610, 622, 227 P3d 695 (2010). Although "it is possible to restrict a person's liberty and freedom of movement by purely verbal means," *Ashbaugh,* 349 Or at 317, we have held that, under various circumstances, "questions about whether a defendant is engaged in criminal activity do not constitute criminal stops," *State v. Wiener,* 254 Or App 582, 590-91, 295 P3d 152, *rev den,* 354 Or 387 (2013); *see also, e.g., State v. Wabinga,* 265 Or App 82, 85, 333 P3d 1213 (2014) (defendant not seized when officer asked if he "'had ever been contacted by police'" and whether he "was 'still on a parole status'"); *State v. Acuna,* 264 Or App 158, 164-65, 331 P3d 1040, *rev den,* 356 Or 400 (2014) (defendant not seized when officer approached the group defendant was standing with and said "that police had received a report of marijuana use at that location, and asked them if they had marijuana"); *State v. Beasley,* 263 Or App 29, 35, 326 P3d 634, *rev den,* 356 Or 397 (2014) (officer did not seize defendant when, in a "casual tone," he asked for defendant's identification and, while retaining it, inquired about whether he was on probation or had any warrants and if he could run a records check).

For a police officer's verbal inquiries to amount to a seizure, "something more than just asking a question, requesting information, or seeking an individual's cooperation is required of an officer's conduct." *State v. Backstrand,* 354 Or 392, 403, 313 P3d 1084 (2013). That "something

more" can be "the content or manner of questioning, or the accompanying physical acts by the officer, if those added factors would reasonably be construed as a 'threatening or coercive' show of authority requiring compliance with the officer's request." *Id.* (quoting *Ashbaugh*, 349 Or at 317); *see also, e.g., State v. Zaccone*, 245 Or App 560, 563-67, 261 P3d 1287 (2011), *rev den*, 355 Or 381 (2014) (holding that defendant was seized where the officer told defendant that she knew that he was on probation, defendant admitted to the officer that he had given her a false name, and defendant was asked for consent to search a backpack because "a reasonable inference" was that defendant was the subject of a continuing investigation, and "his or her freedom of movement had been significantly restricted by [the officer's] show of authority").

In light of the circumstances here, Haugen's questions were not so different in "content or manner" from the questions about drugs and weapons in the previously cited cases such that Haugen's questions could reasonably be construed as "a threatening or coercive show of authority requiring compliance with the officer's request." *Backstrand*, 354 Or at 403 (quotation marks omitted). Haugen did not draw his weapon, raise his voice, or otherwise threaten defendant; rather, the questioning was, as the trial court found, "easygoing." As outlined by prior decisions, the questions were within the bounds of "mere conversation." Additionally, the fact that the driver remained in the car waiting to be cited when defendant was asked to step out also fails to elevate the encounter to a seizure. Under *Ashbaugh*, the question is whether a reasonable person in defendant's position would believe that Haugen had significantly restricted her liberty or freedom of movement "by physical force or through some 'show of authority.'" *Ashbaugh*, 349 Or at 309. Under the totality of the circumstances here, there was no such physical force or show of authority. Accordingly, defendant was not stopped when Haugen asked her to step out of the car and walk toward his patrol car, Haugen's questions did not turn that consensual encounter into a seizure, and the trial court did not err in denying defendant's motion to suppress.

In her second assignment of error, defendant contends that the trial court erred by imposing attorney fees in

the amount of $1,352 when the record was silent as to her ability to pay them. Defendant acknowledges that she did not object at the time, but argues that the court committed plain error and urges us to exercise our discretion to correct the error. The state concedes that the trial court committed plain error in imposing those fees. *See* ORS 151.505(3) ("The court may not require a person to pay costs under this section unless the person is or may be able to pay the costs."); ORS 161.665(4) ("The court may not sentence a defendant to pay costs under this section unless the defendant is or may be able to pay them."); *see also State v. Coverstone*, 260 Or App 714, 716, 320 P3d 670 (2014) (holding that it is plain error for a trial court to require a defendant to pay court-appointed attorney fees in the absence of legally sufficient evidence that defendant has the ability to pay the amount imposed).

We accept the state's concession and, for the reasons stated in *Coverstone—viz.*, the gravity of the error, the length of defendant's prison term (here, 36 months), and the lack of any evidence of financial resources—conclude that it is appropriate for us to exercise our discretion to correct the error. 260 Or App at 717; *see State v. Hunt*, 271 Or App 347, 353, 350 P3d 521 (2015) (exercising discretion to correct erroneous imposition of $510 in attorney fees because the amount was a substantial sum given that defendant was sentenced to 14 months in prison, and there was no indication on the record that defendant had or would have the ability to pay).

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.